# Third District Court of Appeal

## State of Florida

Opinion filed May 24, 2017.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D14-39
Lower Tribunal No. 12-0760TTS
_____

**Thomas Amador,**
Appellant,

vs.

**The School Board of Monroe County, Florida,**
Appellee.

An appeal from the Florida Division of Administrative Hearings.

Herdman & Sakellarides and Branden Vicari (Clearwater), for appellant.

Vernis & Bowling of the Florida Keys, P.A. and Dirk M. Smits and Theron C. Simmons, for appellee.

Before SUAREZ, C.J., and ROTHENBERG and LAGOA, JJ.

SUAREZ, C.J.

Thomas Amador appeals from the final order of the School Board of Monroe County rejecting the findings of fact and conclusions of law of the

Administrative Law Judge ("ALJ") and terminating Amador's employment. We reverse. The record shows that the findings of fact and conclusions of law of the Administrative Law Judge were supported by competent, substantial evidence. As such, the School Board cannot override the findings and conclusions of the Administrative Law Judge.

In January 2012, the Superintendent of Schools for Monroe County filed an administrative Complaint against Thomas Amador. The complaint did not allege any violation of, nor did it attach a copy of, the applicable collective bargaining agreement ("CBA"). The administrative Complaint instead alleged violations of two School Board of Monroe County ("School Board") policies, policy item 4120, Employment of Support Staff, and policy item 4210, which lists Standards of Ethical Conduct. Section 4120[1] provides a description of what constitutes a "regular" vs "support" employee and how the Superintendent is to regulate that employment. Policy 4210[2] establishes standards of ethical conduct "for all

[1] School Board Policy 4120, Employment of Support Staff, provides, in part:

> Support employees include all those employees who work in noninstructional, noncontracted roles . . . subject to dismissal transfer, promotion, or resignation and the provisions of the collective bargaining agreement. (emphasis added).
>
> * * *
>
> Any support staff member employed by the Board who shall be guilty of any willful violation of the policies of the Board shall be guilty of gross insubordination and shall be subject to dismissal or such other lesser penalty as the Board may prescribe. (emphasis added).

support members in the District who have direct access to students." The Complaint alleged that Amador violated policy 4120 by "willful violation of the policies of the School Board, including School Board Policy 4210 . . . ." Regarding policy 4210, the Superintendent specifically alleged Amador violated items (I), (L), and (Q).

Policy 4210 by its own terms, applies only to Support Staff Members who have direct access to students. Policy item 4210 (I) provides that a support staff member may not use institutional privileges for personal gain or advantage; Policy item 4210 (L) provides that the support staff member must maintain honesty in all

---

[2] School Board Policy 4210, Standards of Ethical Conduct provides, in relevant part (specifically, subsections I, L, and Q):

> An effective educational program requires the services of men and women of integrity, high ideals, and human understanding. The School Board expects all support staff members to maintain and promote these essentials. Furthermore, **the School Board hereby establishes the following as the standards of ethical conduct for all support staff members in the District who have direct access to students**: A support staff member with direct access to students shall:
>
> I. not use institutional privileges for personal gain or advantage.
>
> * * *
> L. maintain honesty in all dealings.
>
> * * *
> Q. not submit fraudulent information on any document in connection with employment.

(emphasis added)

3

dealings; Policy item 4210 (Q) provides that the support staff member may not submit fraudulent information on any document in connection with employment. The Superintendent alleged in the Complaint that Amador violated these specific ethical standards by failing to log accurate work hours and work locations thereby stealing time, inappropriately using a District-owned vehicle for personal use (only one incident was documented), and providing fraudulent information in vehicle use/mileage logs, again by failing to log accurate hours and travel locations.

Amador timely requested a formal administrative hearing, and the matter was referred to the Division of Administrative Hearings ("DOAH"). At the hearing, the ALJ admitted evidence, and heard argument and testimony from both parties. The ALJ issued an Order recommending dismissal of the Complaint because there was no record evidence of the terms or provisions of an applicable collective bargaining agreement. In the alternative, the ALJ recommended dismissal, specifically finding that no evidence was produced at the hearing to prove that Amador had "direct access" to the students as was required in order to have the provisions of Policy 4210 apply to him. The ALJ stated specifically:

> Absence of record evidence concerning the terms of the collective bargaining agreement required the dismissal of the Complaint. The undersigned further concluded, in the alternative, that dismissal of the Complaint was warranted in light of Petitioner's failure to demonstrate the applicability of School Board Policy 4210 - a policy that, by its express terms, applies only to support staff members with direct access to students. (No evidence was adduced during the final hearing that would support a finding that Respondent had such direct

4

access.)  In light of these deficiencies, the undersigned found it unnecessary - and therefore declined - to make specific findings concerning the underlying factual allegations.

And,

The record is devoid of evidence that Respondent has direct access to students, and the nature of Respondent's position (an air-conditioning mechanic) does not permit the undersigned to infer as much; therefore, Petitioner has failed to demonstrate that Respondent is subject to the proscriptions of School Board Policy 4210.

6. In light of these unique circumstances - i.e., Petitioner has not proceeded against Respondent under the terms of the collective bargaining agreement (as it should have), but rather, under a school board policy that applies only to employees that have direct access to students - it is unnecessary to reach the merits of the underlying allegations of misconduct.  Petitioner bears the burden of proof in this proceeding.

Because of the lack of evidence of the CBA or "direct access," the ALJ choose not to address the factual allegations in the Complaint.  The ALJ recommended that the Complaint against Amador be dismissed and Amador be immediately reinstated to his job.  The School Board remanded the Recommended Order to DOAH with instructions that the ALJ make findings of fact and reach the merits based on the record evidence submitted by the parties, and submit an Amended Recommended Order based on those findings of fact.

On remand, the ALJ reviewed the entire record and transcripts from the previous hearing and found, once again, that the record was devoid of any evidence that Amador's air-conditioning mechanical employment afforded him "direct

5

access" to students as that phrase is used in School Board policy 4210. The ALJ concluded that

> Assuming for the sake of argument that the CBA's omission from the record is of no consequence, the rule under which Petitioner seeks to discipline Respondent (School Board Policy 4210) applies, by its express terms, only to support employees who have direct access to students. The record is devoid of evidence that Respondent has such access, and the nature of his position (an air-conditioning mechanic) does not permit the undersigned to infer as much. Petitioner has, therefore, failed to demonstrate that Respondent is subject to the proscriptions of School Board Policy 4210.

Regarding the fraudulent documentation allegation, the ALJ further concluded that the record evidence,

> demonstrates, at most, that Respondent maintained inconsistent and incomplete records, took a late break on one occasion, and spent an extra 15 minutes away from the work site on a day - October 18, 2011, the date of his grievance hearing - when no repair tasks were to be performed. Petitioner has not proven, however, that these acts, while arguably insubordinate (a charge not brought in this proceeding), were fraudulent, dishonest, or constituted a misuse of institutional privileges for personal gain or advantage.

Once again, the ALJ recommended that the School Board enter a Final Order dismissing the administrative complaint and reinstating Amador. The Superintendent submitted exceptions to the Recommended Order and the Recommended Order on Remand arguing, based on the same record and facts as the ALJ, that the ALJ had arrived at the wrong factual and legal conclusions. Amador filed a response. The Monroe County School Board rejected the ALJ's

6

Recommended Order and findings of fact and granted all of the exceptions filed by the Superintendent and terminated Amador's employment.

We review the Board's final order pursuant to section 120.68, Florida Statutes (2014). The Board may not reject a hearing officer's findings unless it first determines that they were not based on competent, substantial evidence, or that the proceedings before the hearing officer did not comply with the essential requirements of law. See McMillan v. Broward Cnty. Sch. Bd., 834 So. 2d 903 (Fla. 4th DCA 2003); Gross v. Dep't of Health, 819 So. 2d 997 (Fla. 5th DCA 2002). Furthermore, when determining whether to reject or modify the findings of fact in a recommended order, the agency is not permitted to weigh the evidence, judge the credibility of the witnesses, or interpret the evidence to fit its ultimate conclusions. Gross, 819 So. 2d at 1001. "In summary, if there is competent substantial evidence to support the findings of fact in the record . . . the agency may not reject them, substitute its findings, or make new findings." Id. Furthermore, factual issues susceptible of ordinary methods of proof that are not infused with policy considerations are the prerogative of the hearing officer as the finder of fact; it is the hearing officer's function to consider all the evidence presented, resolve conflicts, judge credibility of witnesses, draw permissible inferences from the evidence, and reach ultimate findings of fact based on competent, substantial evidence. Tedder v. Fla. Parole Comm'n, 842 So. 2d 1022,

1025 (Fla. 1st DCA 2003). Thus, if the evidence presented supports two inconsistent findings, as it did in this case, it is the ALJ's role to decide the issue one way or the other, and the agency may not reject the ALJ's finding or otherwise interpret the evidence to fit its desired ultimate conclusion unless there is no competent, substantial evidence from which the finding could reasonably be inferred. See id.; Bridlewood Grp. Home v. Agency for Persons with Disabilities, 136 So. 3d 652, 657 (Fla. 2d DCA 2013).

In its exceptions to the Recommended Order and Recommended Order on Remand from the ALJ, the School Board concluded that, given the same record evidence, the ALJ arrived at incorrect legal conclusions. On the same record, it concluded that Amador did have "direct access" to the students [3] and concluded that Amador's actions demonstrated willfulness, fraud, and intent to steal where,

[3] The School Board argued on appeal that the evidence can only be interpreted to conclude that Amador's job put him in "direct contact" with students pursuant to section 1012.315, Florida Statutes, Level 2 screening under the Jessica Lunsford Act, and thus Policy 4120 and 4210 applies to Amador, who works on air-conditioning and refrigeration units on/inside school grounds. We note from the record that this argument was not pled or raised below in either of the two reviews presented to the ALJ, and only mentioned for the first time in the School Board's Exceptions to the Recommended Order on Remand. We thus decline to consider it for the first time on appeal. See Vorbeck v. Betancourt, 107 So. 3d 1142, 1147-48 (Fla. 3d DCA 2012). As Florida courts have long recognized, "[i]n order to be preserved for further review by a higher court, an issue must be presented to the lower court and the specific legal argument or ground to be argued on appeal or review must be part of that presentation." Sunset Harbour Condo. Ass'n v. Robbins, 914 So. 2d 925, 928 (Fla. 2005) (quoting Tillman v. State, 471 So. 2d 32, 35 (Fla. 1985)).

8

by contrast, based on the same record, the ALJ concluded that the evidence more likely reflected sloppy recordkeeping. Where reasonable people can differ about the facts, however, an agency is bound by the hearing officer's reasonable inferences based on the conflicting inferences arising from the evidence. Greseth v. Dep't of Health & Rehab. Servs, 573 So. 2d 1004, 1006–1007 (Fla. 4th DCA 1991). See Resnick v. Flagler Cnty. Sch. Bd., 46 So. 3d 1110, 1112–13 (Fla. 5th DCA 2010) ("In a fact-driven case such as this, where an employee's conduct is at issue, great weight is given to the findings of the [ALJ], who has the opportunity to hear the witnesses' testimony and evaluate their credibility."); Stinson v. Winn, 938 So. 2d 554, 555 (Fla. 1st DCA 2006) ("The [ALJ] is entitled to rely on the testimony of a single witness even if that testimony contradicts the testimony of a number of other witnesses.").

> Further,

> [w]e recognize the temptation for agencies, viewing the evidence as a whole, to change findings made by a hearing officer that the agency does not agree with. As an appellate court, we are sometimes faced with affirming lower tribunal rulings because they are supported by competent, substantial evidence even though, had we been the trier of fact, we might have reached an opposite conclusion. As we must, and do, resist this temptation because we are not the trier of fact, so too must an agency resist this temptation since it is not the trier of ordinary factual issues not requiring agency expertise.

Heifetz v. Dep't of Bus. Regulation, Div. of Alcoholic Beverages & Tobacco, 475 So. 2d 1277, 1282 (Fla. 1st DCA 1985). We would add that this is not a case

where an agency requires deference based on its own expertise; such deference is not applicable to disciplinary proceedings based on an alleged breach of a broad standard of conduct, such as Amador is alleged to have violated. See Gross, 819 So. 2d at 1004. Thus, upon careful review of the entire record we conclude that competent substantial evidence supports the ALJ's findings and recommendation. We reverse the School Board's Final Order and remand for entry of an order adopting the ALJ's Recommended Order on Remand.

Reversed and remanded.

LAGOA, J., concurs.

ROTHENBERG, J. (dissenting).

Thomas Amador ("Amador") appeals from the final order issued by the State of Florida's Division of Administrative Hearings ("DOAH"), rejecting the Administrative Law Judge's ("ALJ") Recommended Order on Remand. Specifically, the ALJ recommended: (1) dismissal of the administrative complaint filed against Amador under the School Board of Monroe County Bylaws and Policies and various state statutes; and (2) immediate reinstatement of Amador's employment. Because: (1) the complaint alleges violations of both School Board Policy 4210 and 4120; (2) the ALJ improperly limited his review to School Board Policy 4210; and (3) the record supports termination under both School Board Policy 4210 and 4120, DOAH's order terminating Amador's employment should be affirmed.

The majority opinion recognizes that the complaint alleges violations of both School Board Policy 4210 and 4120. The majority opinion, however, suffers from the same infirmity as the ALJ's Recommended Order on Remand—it fails to address the violations of School Board Policy 4120, and limits its review to the ALJ's findings regarding School Board Policy 4210. For the reasons that follow, I disagree with the majority opinion's findings regarding School Board Policy 4210,

11

and because the majority opinion has found no error as to DOAH's findings regarding School Board Policy 4120, affirmance is **required**.

## The Factual and Procedural Background

Amador was employed by the Monroe County School Board as an air conditioning mechanic from 2006 through 2012. During his employment, Amador's performance steadily declined. The record conclusively reflects that Amador received unfavorable evaluations, reprimands, warnings, and both informal and formal discipline on a number of occasions. Specifically, Amador was counseled and disciplined numerous times for: failing to follow written procedures, policies, and directions; showing up late for work; not being at work during working hours; not keeping proper and accurate logs; and other acts of insubordination.

For example, in August of 2008, Amador was suspended for insubordination due to belligerent and disruptive conduct. He was also suspended for three days in 2009 for leaving the workplace during work hours and for theft of time. During the 2009 disciplinary process, Amador was informed that he must notify his supervisor or secretary if he was going to be away from the workplace. In August of 2010, Amador was disciplined for failing to return to work after expiration of an approved leave. On February 8, 2011, Jeff Barrow, the Assistant Director of Facilities, sent Amador a written warning emphasizing the need for Amador to

12

keep accurate truck logs and that his failure to do so would lead to disciplinary action against him. On October 5, 2011, Mr. Barrow sent Amador a written memo warning Amador that he needed to "[g]et to work on time and get out to work in a timely manner."

In January of 2012, Monroe County's Superintendent of Schools filed an administrative complaint seeking termination of Amador's employment. As the majority opinion readily concedes, the complaint alleges violations under **both** section 4120 and section 4210, with specific references to subsection of section 4210, I, L, and Q of The School Board of Monroe County Bylaws and Policies, along with various state statutes. The complaint alleges violations "including but not limited to: Theft of time; inappropriate use of a District owned vehicle; Insubordination; and Fraudulent statements in required District paperwork and logs."

Specifically the complaint alleges the following:

Petitioner, DR. JESUS JARA, Superintendent of Schools of Monroe County, Florida, files this Administrative Complaint, pursuant to Chapters 120, 1001 and 1012, Florida Statutes (2003), Rules 6B-1.001, 6B-1.006, and 6B-4.009, Florida Administrative Code, and the Policies of the School District of Monroe County, Florida and states as follows:

. . . .

6. At all times pertinent hereto, the Respondent was employed as an Air-conditioning Mechanic in the Upper Keys in the Monroe County School District.

13

7.   On November 17th, 2011 Jeff Barrow (Respondent's supervisor) met with Respondent, THOMAS AMADOR, to discuss allegations that he violated School Board Policy, by, including but not limited to: Theft of time; Inappropriate use of a District owned vehicle; Insubordination; and Fraudulent statements in required District paperwork and logs.

8.   School Board Policy provides 4120 provides;

**4120-EMPLOYMENT OF SUPPORT STAFF**

Support employees include all those employees who work in noninstructional, noncontracted roles and serve at the pleasure of the School Board subject to dismissal, transfer, promotion, or resignation and the provisions of the collective bargaining agreement.

. . . .

Any support staff member's misstatement of fact material to qualification for employment or the determination of salary shall be considered to constitute grounds for dismissal.

All support personnel shall become familiar with the policies of the Board and other such policies, regulations, memoranda, bulletins, and handbooks that pertain to their duties in the District. **Any support staff member employed by the Board who shall be guilty of any willful violation of the policies of the Board shall be guilty of gross insubordination and shall be subject to dismissal or such other lesser penalty as the Board may prescribe**. (emphasis added)

. . . .

9.   That the Respondent violated School Board Policy 4120 by willful violation of the policies of the Board, including School Board Policy 4210 and is subject to dismissal for such violation.

10.  School Board Policy 4210, Entitled Standards of ethical conduct provides in relevant part;

14

**4210—STANDARDS OF ETHICAL CONDUCT**

An effective educational program requires the services of men and women of integrity, high ideals, and human understanding. The School Board expects all support staff members to maintain and promote these essentials.

Furthermore, the Board hereby establishes the following as the standards of ethical conduct for all support staff members in the District who have direct access to students:

A support staff members with direct access to students shall:
. . . .

      I.     not use institutional privileges for personal gain or advantage.
    . . . .
      L.     maintain honesty in all dealings.
    . . . .
      Q.    not submit fraudulent information on any document in connection with employment.

Thus, as the majority opinion recognizes, the administrative complaint alleges that Amador "violated School Board Policy 4120 by willful violation of the policies of the Board, including School Board Policy 4210 and is subject to dismissal for such violation." The allegations in the complaint charging theft of time identify two specific dates (October 18, 2011 and October 21, 2011), provide the grounds for disciplinary action, and list the prior notices Amador was given regarding this issue. Amador's inappropriate use of District-owned vehicles is also alleged. Specifically, the complaint alleges that during the thirteen days examined, there were 205 unaccounted for miles on the truck Amador drove, the locations

15

Amador claimed to have worked at on his truck logs did not match the locations he listed on his daily log sheets/work orders, and Amador was seen in his District-owned vehicle at locations unrelated to work. Lastly, the complaint listed the various instances of conduct constituting fraud.

Amador requested, and he received, an administrative hearing, after which the ALJ issued a recommended order. Despite the School Board's January 19, 2012 formal written notice to Amador that he was being suspended for: (1) insubordination under section 4120; and (2) willfully violating section 4210 I., L., and Q., with a recommendation for termination, and despite the fact that the administrative complaint filed on the same date alleges the same violations with more specificity, the ALJ found that the complaint to terminate Amador's employment was based **solely** on alleged violations of School Board Policy 4210. The ALJ then concluded that School Board Policy 4210 only applies to employees with direct access to students, there was no evidence that Amador had direct access to students, and thus it was unnecessary to reach the merits of the School Board's claims. Based on these findings, the ALJ recommended dismissal of the complaint and reinstatement of Amador's employment.

The School Board timely filed its exceptions to the recommended order. Among its exceptions, the School Board argued that the ALJ erred by: finding that School Board Policy 4210 did not apply to Amador as Amador's duties placed him

in positions where he had direct access to students; not considering School Board Policy 4120, where the complaint contained allegations and there was evidence presented regarding the violation of School Board Policy 4120; and finding that the failure to attach the collective bargaining agreement to the complaint was fatal.

Based on the School Board's exceptions and the ALJ's failure to consider the evidence, DOAH remanded the case back to the ALJ to rule on the merits of the underlying allegations of misconduct as required by Rule 28-106.216 of the Florida Administrative Code. On remand, rather than following DOAH's directive and ruling on the underlying allegations of misconduct alleged in the complaint, the ALJ issued a Recommended Order on Remand which again failed to analyze the evidence under either School Board Policy 4120 or 4210 and again recommended dismissal of the complaint and reinstatement of Amador's employment. The ALJ's recommendations on remand were based, in part, on his findings that Amador was not charged with insubordination; School Board Policy 4210 only applies to employees who have direct access to students and "[t]he record is devoid of evidence that [Amador] has such access", and the failure to refer to or include the collective bargaining agreement as a part of the record was a fatal error.

The School Board filed its exceptions to the ALJ's recommendations on remand. The School Board disputed the ALJ's interpretation of "direct access" in

School Board Policy 4210, identified evidence in the record showing that Amador had direct access to the students, and therefore objected to the ALJ's finding that School Board Policy 4210 did not apply to Amador. The School Board additionally excepted to the ALJ's findings that the complaint to terminate Amador's employment was based solely on alleged violations of School Board Policy 4210 and that dismissal of the complaint was required because the collective bargaining agreement was not included in the record. Lastly, the School Board claimed that there was competent substantial evidence in the record that Amador's conduct constituted insubordination in violation of School Board Policy 4120.

DOAH ultimately issued a final order, accepting the School Board's exceptions and terminating Amador's employment with the School Board of Monroe County. It is this order which Amador now appeals.

### ANALYSIS

**A. Does School Board Policy 4210 Apply to Amador and if so, did Amador violate this Policy?**

School Board Policy 4210 sets forth the standards of ethical conduct for support staff members **who have direct access to students**. As previously stated, the School Board alleged that Amador violated the following standards:

> I.      not use institutional privileges for personal gain or advantage.
> . . . .

18

L.    maintain honesty in all dealings.
. . . .
Q.    not submit fraudulent information on any document in connection with employment.

Because "direct access" is not defined, the parties disagreed on how to apply this provision and whether the evidence established the requisite degree of student access.

Although the ALJ did not attempt to determine what "direct access" means, in his recommended order on remand, the ALJ concluded that School Board Policy 4210 did not apply to Amador because "[t]he record is devoid of evidence that [Amador] has such access, and the nature of his position (an air-conditioning mechanic) does not permit the undersigned to infer as much." Because the record does not support the ALJ's finding on this point, DOAH did not err by adopting the School Board's exception to this finding.

The record established that Amador often maintained and repaired air conditioning units at District Schools **while school was in session and while students were present**. The School Board noted that the Jessica Lunsford Act and section 1012.465(1), Florida Statutes, require background screening for "non-instructional school district employees or contractual personnel who are permitted access on school grounds when students are present, who have direct contact with students or who have access to or control of school funds." The School Board

19

therefore argued that if the Jessica Lunsford Act and section 1012.465(1) apply to Amador because his employment permits access on school grounds when students are present, the ethical standards set forth in School Board Policy 4210 should be similarly applied to Amador. DOAH agreed with the School Board.

The majority does not address the undisputed record evidence that Amador, who was responsible for the maintenance of air conditioning units on school grounds, had direct access to students because he worked outside and inside schools during school hours while students were present. Instead the majority merely relies on the ALJ's **conclusion** that there was no evidence that Amador had direct access to students. However, the ALJ either ignored the undisputed evidence or concluded that working in areas while students are present is not direct access. In either event, because working inside schools during school hours in areas where students are present obviously placed Amador in the category of employees who have direct access to students, the record did not support the ALJ's determination. Thus, DOAH was not required to adopt this finding by the ALJ and properly adopted the School Board's exceptions to this finding.

## B. Was School Board Policy 4120 properly pled?

As the majority concedes, the answer to this question is "yes." The complaint alleges in paragraph 7, that Jeff Barrow, Amador's supervisor, met with Amador on November 17, 2011, to discuss allegations that Amador "violated

School Board Policy, by, including but not limited to: Theft of time; Inappropriate use of District owned vehicle; Insubordination; and Fraudulent statements in District paperwork and logs." Paragraph 8 of the complaint recites the relevant provisions of School Board Policy 4120, and paragraph 9 of the complaint alleges that Amador violated School Board Policy 4120.

One of the relevant provisions of School Board Policy 4120 included in the complaint specifies:

> All support personnel shall become familiar with the policies of the Board and other such policies, regulations, memoranda, bulletins, and handbooks that pertain to their duties in the District. **Any support staff member employed by the Board who shall be guilty of any willful violation of the policies of the Board shall be guilty of gross insubordination and shall be subject to dismissal or such other lesser penalty as the Board may prescribe.**

(emphasis added). Further, paragraph 9 of the complaint states that Amador "**violated School Board Policy 4120 by willful violation of the policies of the Board**, **including School Board Policy 4210 and is subject to dismissal for such violation**." (emphasis added). It is therefore clear that the complaint alleges violations of both School Board Policy 4210 and School Board Policy 4120. It is also clear that DOAH's finding that the ALJ failed to acknowledge that Amador was subject to dismissal under School Board Policy 4120, not just 4210, is supported by the record.

**C. Does a finding that Amador did not have "direct access" to the students, as required by School Board Policy 4210, have any relevance to the violations**

21

**of School Board Policy 4120 alleged in the complaint**?

The majority opinion makes the same mistake the ALJ made. After concluding that School Board Policy 4210 only applies to support staff with direct access to students and that Amador did not have that direct access, the ALJ and the majority have failed to address Amador's clear violations of School Board Policy 4120, which, unlike School Board Policy 4210, **does not require direct access to students**. Whereas School Board Policy 4210 limits its application to support staff with direct access to students, School Board Policy 4120 applies to **all** support staff.

> School Board Policy 4120 states the following:
>
> Support employees include all those employees who work in noninstructional, noncontracted roles and serve at the pleasure of the School Board subject to dismissal, transfer, promotion, or resignation and the provisions of the collective bargaining agreement.
>
> . . . .
>
> Any support staff member's misstatement of fact material to qualification for employment or the determination of salary shall be considered to constitute grounds for dismissal.
>
> All support personnel shall become familiar with the policies of the Board and other such policies, regulations, memoranda, bulletins, and handbooks that pertain to their duties in the District. **Any support staff member employed by the Board who shall be guilty of any willful violation of the policies of the Board shall be guilty of gross insubordination and shall be subject to dismissal or such other lesser penalty as the Board may prescribe**. (emphasis added)
>
> . . . .

There is no dispute that Amador was a support staff employee. DOAH found that Amador violated School Board Policy 4120 by willfully violating the policies of the Board and that he was guilty of gross insubordination.

**D. Is there competent substantial evidence to support DOAH's finding that Amador violated School Board Policy 4120?**

As will be detailed below, Amador habitually clocked in for work late, took unauthorized breaks, and failed to keep accurate work and vehicle logs. The evidence of these violations was unrefuted. Thus, DOAH's finding of gross insubordination is supported by competent substantial evidence.

Mr. Barrow testified that Amador was required to clock into work by 7:00 a.m., and he was entitled to take a one-hour lunch break, commencing between the hours of 11:00 a.m. and 1:00 p.m., plus two fifteen-minute breaks to be taken at around 9:00 a.m. and 2:00 p.m. each day. Employees are permitted to leave their work area for lunch so long as they return within one hour. A lunch break taken by maintenance employees later than 1:00 p.m. requires approval from their supervisor, Jeff Barrow, and break times cannot be added to lunch time. Mr. Barrows confirmed that both the School Board's policies and the collective bargaining agreement prohibit extending a meal break by combining the break periods, and he testified that this prohibition was discussed at meetings he had with

23

Amador. Amador was also required to keep accurate daily work logs and vehicle logs.

The unrebutted evidence established that, although Amador was regularly advised that he needed to report to work on time, he clocked in late for work thirty-one out of the thirty-six days monitored by the School Board, between November 22, 2010 and January 27, 2011. Additionally, on October 18, 2011, a day in which Amador's conduct was being monitored by the School Board, Amador attended a meeting in Key West that concluded at 11:30 a.m. but Amador did not return to work until just before 4:00 p.m. to clock out for the day. Even if Amador's explanation regarding October 18, 2011 is accepted as true, by his own admission, he took an unapproved late lunch that extended past the one-hour limit.

The unrebutted physical evidence also established that Amador failed to keep accurate work and vehicle logs. His work and vehicle logs did not match. For example, his vehicle logs for October 4, 10, and 11 of 2011 list school locations where Amador had no work tasks—a fact established by the work orders and daily logs for those dates, and although Amador claimed on his daily work log for October 13, 2011 that he performed tasks at two schools, his vehicle log for that date is blank. In fact, the evidence established fifty-four unexplained discrepancies between Amador's work logs and vehicle logs.

Each day, after clocking in for work, Amador was required to monitor the temperatures by computer for his assigned schools and then complete any paperwork associated with the repairs he had made on the previous day. The time spent on these tasks were reported on Amador's work log. Although these tasks, together, should take less than one hour, and Amador was required to document accurately the time he actually spent, his entries on **every** log sheet for these tasks was two hours. Additionally, the unrefuted evidence is that **these log entries were photocopied**.

School Board Policy 4120 required Amador to be familiar with the policies and regulations that pertained to his duties. Amador's duties included reporting for work on time, accurately reporting the time he spent on each task, keeping accurate work and vehicle logs, obtaining prior permission to take a late lunch, and limiting his lunch breaks to one hour. The unrefuted evidence is that Amador was aware of each of these requirements. He was actually previously warned and even suspended for earlier violations of these requirements. The unrefuted evidence also showed that despite prior warnings, Amador regularly reported to work late and habitually did not keep accurate work and vehicle logs. Thus, DOAH's finding of gross insubordination is supported by competent substantial evidence, and because termination of Amador's employment is a penalty option based on a

violation of School Board Policy 4120, DOAH's order terminating Amador's employment should be affirmed.

**E. The majority's failure to address the violations of School Board Policy 4120**

The majority opinion appears to have mistakenly conflated the requirements and limiting language of School Board Policy 4210 with School Board Policy 4120 and has omitted any analysis or explanation for its reversal of the School Board's termination of Amador's employment based on Amador's violations of School Board Policy 4120. The majority opinion then finds that the ALJ's findings and recommendations are supported by competent substantial evidence, and thus the majority concludes that DOAH was required to adopt them. However, the ALJ did not address School Board Policy 4120, nor evaluate the evidence, which was mainly unrefuted, regarding the violations of School Board Policy 4120. It is therefore difficult to understand how the majority reached its conclusion that the ALJ's findings and recommendations relevant to School Board Policy 4120 was supported by competent substantial evidence.

While I agree with the general principles regarding the adoption of a hearing officer's findings, these general principles do not apply here where the hearing officer failed to make any findings as to the misconduct alleged in the complaint specific to School Board Policy 4120, despite DOAH's two directives to the ALJ to make this finding.

26

**F. Does the failure to reference the collective bargaining agreement in the complaint or include it in the record require dismissal of the complaint?**

The ALJ answered this question in the affirmative. DOAH, by adopting the School Board's exceptions, however, concluded otherwise. Although the majority has failed to address his issue, DOAH clearly reached the correct conclusion. Florida Administrative Code Rule 28-106.2015 sets forth the pleading requirements for an administrative complaint. Rule 28-106.2015 **does not** include the requirement to attach or reference the collective bargaining agreement in an administrative complaint. Thus, dismissal of the complaint was not required based on these arguments. Additionally, any defect in the complaint was waived by Amador.

Rule 28-106.2015 states, in pertinent part:

(4) The agency's administrative complaint shall contain:

> (a) The name of the agency, the respondent or respondents against whom disciplinary action is sought and a file number.
> (b) The statutory section(s), rule(s) of the Florida Administrative Code, or the agency order alleged to have been violated.
> (c) The facts or conduct relied on to establish the violation.
> (d) A statement that the respondent has the right to request a hearing to be conducted in accordance with Sections 120.569 and 120.56, F.S., and to be represented by counsel or other qualified representative.

The complaint complied with each of these provisions. If Amador wished to attack the sufficiency of the complaint, then he was required to file a motion to

27

dismiss the complaint pursuant to Florida Administrative Code Rule 28-106.204(2) within twenty days of the assignment of an ALJ in a DOAH proceeding. Because Amador failed to file a motion to dismiss the complaint, he waived the right to challenge the sufficiency of the complaint based on the failure to reference or attach the collective bargaining agreement.

## **CONCLUSION**

The ALJ failed to consider the evidence in this case despite DOAH's specific instructions to the ALJ on remand. The ALJ's failure to consider evidence is based on its incorrect findings that: (1) School Board Policy 4120 was not properly pled in the complaint; (2) School Board Policy 4210 could not be applied because there was no evidence that Amador had direct access to students; and (3) the School Board's failure to reference or attach the collective bargaining agreement precluded review. However, as the majority concedes, the complaint clearly and unequivocally charged Amador with violating both School Board Policy 4210 and 4120. Second, the record evidence clearly established Amador's direct access to students. The undisputed evidence was that Amador maintained and repaired air conditioning units inside and outside the school buildings while school was in session and with students present. Third, even if we were to conclude that DOAH erred by failing to adopt the ALJ's findings as to School Board Policy 4210, we must still affirm the order under review because the ALJ

28

made no findings as to School Board Policy 4120 and DOAH'S findings as to School Board Policy 4120 are supported by competent substantial evidence. Fourth, there is no requirement that the collective bargaining agreement be referenced in or attached to the complaint, and Amador waived any objection by failing to file a motion to dismiss the complaint. Accordingly, the final judgment terminating Amador's employment should be affirmed.

Although the majority appears to base its decision to reverse the final judgment upon the premise that DOAH improperly reweighed the evidence, DOAH did not **reweigh** the evidence. It simply reviewed the evidence itself after the ALJ refused to do so even after DOAH instructed the ALJ to reach the merits on remand. A "reweighing" of the evidence infers that the evidence was initially weighed by the ALJ. Since the ALJ failed to reach the merits after directed to do so on remand, he did not weigh the evidence. DOAH was therefore left with no choice but to review the record and make these determinations itself.

Accordingly, I dissent.